UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| **IN THE MATTER OF:**<br><br>**BIN-00029 (FIELD S-1); BIN-00030 (FIELD S-2); BIN-00033 (M-1); BIN-00135 (FIELD CALL); BIN-00137 (FIELD S-7/8); BIN- 00138 (FIELD S-4/5/6); BIN 00139 (FIELD S-11); BIN-00141 (FIELD S-9/10); BIN- 00142 (FIELD REID W); BIN-00143 (FIELD REID E); BIN-00146 (FIELD OLESON); AND BIN-00389 (FIELD S-3).** | Case No. 1:16-mj-09608-EJL-CWD<br><br>**MEMORANDUM DECISION AND ORDER**<br><br>**REPORT AND RECOMMENDATION** |

### INTRODUCTION

This matter is related to Case No. 1:15-cv-143-EJL-CWD, *Mickelsen Farms, LLC et. al. v. Animal and Plant Health Inspections Service, et. al,.* currently pending before the Court. In *Mickelsen*, the plaintiffs are challenging the rulemaking authority and enforcement mechanism APHIS employs to carry out the inspection and sampling procedures related to the detection and eradication of the Pale Cyst Nematode, a pest that attacks potato crops.

**MEMORANDUM DECISION AND ORDER/REPORT AND RECOMMENDATION - 1**

In the instant matter, APHIS served subpoenas on several field owners and operators on October 19, 2016, requesting access to twelve fields to collect soil samples. The samples would be tested for the presence of Pale Cyst Nematode (PCN). The Farmers[1] refused access. APHIS then sought administrative search warrants based upon the declaration of Brian Marschman (Dkt. 1), to enter the fields and collect soil samples. The warrants were approved by United States Magistrate Judge Mikel Williams on November 8, 2016. Soil sampling commenced on November 9, 2016.

On November 10, 2016, the Farmers filed a motion for the Court to quash the warrants, or alternatively, to stay execution of the warrants, to issue a protective order, and to suppress evidence. On November 10, 2016, the Court granted the motion to stay until briefing and a hearing on the motion could occur on an expedited basis. Prior to issuance of the order, APHIS was able to complete sampling on two fields, BIN-00139 (S-11 field) and BIN-00389 (S-3 field), and sampled approximately 64% of BIN-00138 (S-4/5/6 field). On November 14, 2016, APHIS filed a motion for reconsideration of the Court's order. The Court conducted a hearing on November 17, 2016.

The Farmers here object to the warrants on three grounds: (1) the warrants were sought without regard to the pending litigation in *Mickelson*; (2) the warrants contravene the due process afforded to the Farmers under 7 U.S.C. § 7733(c); and (3) the warrants lack probable cause. The Farmers seek to quash the warrants, or alternatively to stay execution pending a final decision in *Mickelson*, or alternatively to be afforded due

---

[1] The Farmers are CVRH Farms, Mickelsen Farms, and Steve Oleson. Only Mickelsen Farms is a plaintiff in Case No. 1:15-cv-143-EJL-CWD.

**MEMORANDUM DECISION AND ORDER/REPORT AND RECOMMENDATION - 2**

process under Section 7733(c). The Farmers seek also a protective order to prevent the damage allegedly caused by APHIS personnel driving tractors over the planted farm ground. And finally, the Farmers seek to suppress the soil samples that have been collected because they were collected under invalid warrants.

## DISCUSSION

**1.     Consent**

The issue of consent to the jurisdiction of a magistrate judge to decide the pending motions without a report and recommendation to a district judge is a preliminary matter. There is persuasive authority holding that a motion to quash an administrative search warrant is not a pretrial matter under 28 U.S.C. § 636(b)(1)(A), because the motion decides the entirety of the issues. *See N.L.R.B. v. Frazier*, 966 F.2d 812, 817 (3rd Cir. 1992) (finding that a proceeding to enforce an agency subpoena is a dispositive matter); *Aluminum Co. of Am. v. U.S. EPA*, 663 F.2d 499 (4th Cir. 1981) (company's motion to quash administrative search warrant was not a pretrial matter under 636(b)(1)(A) because it set forth all the relief requested); *U.S. v. Bell*, 57 F.Supp.2d 898, 905 (N.D. Cal. June 22, 1999) (holding that motion to quash IRS administrative summons was dispositive because, unlike a discovery motion, the petition was not ancillary to a larger proceeding – it was the entire proceeding).[2]

---

[2] The Farmers cite *In re Worksite Inspection of Quality Products, Inc.*, 592 F.2d 611, 613 (1st Cir. 1979), for the proposition that a magistrate judge may quash or withdraw an unexecuted warrant, and therefore the Court may withdraw the nine unexecuted warrants. However, the court in *Quality Products* did not actually decide that question, and the dicta is overshadowed by the court's holding. The appellate court held the district court lacked jurisdiction in the first instance to consider the motion to quash the administrative warrant, and ordered the district court to dismiss the matter in its entirety. 592 F.2d at 617.

According to the above authority, the Court will issue a report and recommendation with regard to the Farmers' motion to quash. However, APHIS's motion for reconsideration of the Court's order staying these proceedings is not dispositive, and the Court has authority to reconsider its own order. The Court will issue a final order in that regard.

**2.      Authority for the Warrants**

The Plant Protection Act, 7 U.S.C. § 7701 – 7786, bestows upon the Secretary of the Department of Agriculture and other Federal agencies the authority to regulate exports, imports, and interstate commerce in agricultural products and other commodities that pose a risk of harboring plant pests or noxious weeds as one way to reduce the risk of dissemination of plant pests or noxious weeds. 7 U.S.C. § 7701(2), (3). PCN is a pest to potatoes and other crops. It was first discovered in 2006, in soils that had accompanied potatoes into a potato processing facility in Eastern Idaho. There is no dispute that PCN is a soil-borne organism that infests roots, where females attach, feed, and reproduce. Females form cysts containing 200 to 600 eggs, which can lay dormant (but detectable through testing) and viable in soil for up to 30 years. If left unchecked, PCN can cause wilting, stunted growth, poor root development, and early plant death, thereby reducing crop yields up to 80%.

PCN spreads through the transport of cysts in soil, which may occur with the movement of infested soil on farm machinery, or on soil adhering to potatoes or other crops. The PCN program is primarily concerned with the movement of soil on farm machinery. To eliminate the spread of PCN, there are two levels of sanitation. First, there

**MEMORANDUM DECISION AND ORDER/REPORT AND RECOMMENDATION - 4**

are minimum sanitation requirements involving pressure washing. If a field is infested, however, the minimum requirements do not provide adequate protection, and full sanitation requirements, including steam treatments, are required to prevent the spread of PCN. Soil sampling is the primary method for determining the level of sanitation required.

The Plant Protection Act allows the Secretary to "gather and compile information and conduct any investigations…necessary for the administration and enforcement of this chapter." 7 U.S.C. § 7732. To that end, the Secretary has the power to subpoena the production of evidence, or to require a person to whom the subpoena is directed to permit the inspection of premises relating to any matter under investigation. 7 U.S.C. § 7733. Persons required to submit to inspection may disobey the subpoena. In the case of disobedience,

> the Secretary **may** request the Attorney General to invoke the aid of any court of the United States within the jurisdiction in which the investigation is conducted, or where the person resides, is found, transacts business, is licensed to do business, or is incorporated, in requiring the attendance and testimony of any witness, the production of evidence, or the inspection of premises. In case of a refusal to obey a subpoena issued to any person, a court may order the person to appear before the Secretary and give evidence concerning the matter in question, produce evidence, or permit the inspection of premises. Any failure to obey the court's order may be punished by the court as a contempt of the court.

7 U.S.C. § 7733(c) (emphasis added).

Alternatively, the Secretary may "enter, with a warrant, any premises … for the purpose of conducting investigations or making inspections and seizures under this chapter." 7 U.S.C. § 7731(c)(1). Upon a showing of probable cause to believe that certain

**MEMORANDUM DECISION AND ORDER/REPORT AND RECOMMENDATION - 5**

premises harbor a regulated plant pest, a United States magistrate judge may issue a warrant for the entry upon the premises to conduct any investigation or make any inspection or seizure. 7 U.S.C. § 7731(c)(2).

### A.     *Pending Litigation*

*Mickelsen* involves a challenge to the sampling protocols APHIS uses to regulate individuals, including the Farmers here. The Farmers argue the Court should quash or stay the execution of the warrants until Judge Lodge resolves the claims in *Mickelson*, which claims include whether the sampling protocols used by APHIS violate Federal law. The Farmers complain the warrants invoke the same sampling procedures contested in in *Mickelsen*.

While there is inherent appeal to the Farmers' arguments, the sampling and testing protocols currently in place exist so that APHIS can carry out its statutory obligation to protect agriculture, the environment, and the economy of the United States. 7 U.S.C. § 7701(1). Permitting the Farmers to thwart that obligation, and force APHIS to wait until the litigation in *Mickelsen* is concluded before sampling may resume and testing can begin, may frustrate the purpose of the Act and allow PCN to multiply and spread.[3] Moreover, the Farmers' motion appears to the Court to be shortsighted. If PCN has spread to the twelve associated fields, or any one of them, and farm equipment does not

---

[3] APHIS illuminates the implications of further delay in its motion for reconsideration. APHIS explains that soil samples must be collected before the ground hardens, and that after collection, testing takes 2 – 3 months to complete. If additional sampling is delayed until next spring, the samples would not be tested prior to the start of the farming season when farm equipment begins to move between or among the fields. Supp. Decl. of Marschman. (Dkt. 17-1.)

**MEMORANDUM DECISION AND ORDER/REPORT AND RECOMMENDATION - 6**

receive the higher level of sanitation required to eradicate the pest, PCN may continue to multiply and attack future potato crops, thereby destroying the Farmers' livelihoods.

Thus, until the sampling protocols are deemed to be in violation of federal law, the law is enforceable, and APHIS should be entitled to carry out its obligations under the authority of the Plant Protection Act.

**B.** *Due Process*

The Farmers argue they were not afforded due process under Section 7733(c), and that, before APHIS could obtain a warrant, it was required to adhere to the procedures in Section 7733(c) affording the Farmers due process. According to the Farmers, the due process protections require an evidentiary hearing.

The problem with the Farmers' argument is that Section 7733(c) affords an optional process. If a person disobeys the subpoena, the Secretary "may" request the aid of the Court. The Secretary is not required to do so. Further, there is nothing in the statute that prohibits the Secretary from choosing instead to obtain a warrant. The probable cause requirement provides sufficient due process, and there is nothing requiring advance notice, as explained in the following section.

**C.** *Probable Cause*

The Farmers initially attack the ex parte issuance of the warrant, and next, APHIS's factual justification for the warrant. The Farmers complain the warrants were not served upon their counsel, and they were not notified of the warrants. APHIS is not required to give advance notice of an application for a search warrant, but may proceed

ex parte where appropriate. Under the Plant Protection Act and § 7731, APHIS has the authority to seek an administrative search warrant ex parte.

Next, the grant of an administrative search warrant is governed by lesser standards than the "probable cause" standard that applies under criminal law. *Matter of Alameda County Assessor's Parcel Nos. 537-801-2-4 and 537-850-9*, 672 F.Supp.1278, 1287 (N.D. Cal. 1987). The agency may be entitled to a warrant if "'reasonable legislative or administrative standards for conducting an ... inspection are satisfied with respect to a particular [establishment],'" as well as if "probable cause ... [is] based ... on specific evidence of an existing violation." *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 320, (1978) (discussing administrative warrants issued pursuant to OSHA).

The concept of probable cause in the criminal context was set forth in *Illinois v. Gates*, 462 U.S. 213, 233 (1983), which held the totality of the circumstances should guide the magistrate judge's probable cause determination. A magistrate judge's determination of probable cause "should be paid great deference by reviewing courts…and 'courts should not invalidate ... warrant[s] by interpreting affidavit[s] in a hypertechnical, rather than a commonsense, manner.'" *Gates*, 462 U.S. at 236 (quoting *U.S. v. Ventresca*, 380 U.S. 102, 109 (1965)). "Reflecting this preference for the warrant process, the traditional standard for review of an issuing magistrate [judge's][4] probable cause determination has been that so long as the magistrate [judge] had a 'substantial basis for... conclud[ing]' that a search would uncover evidence of wrongdoing, the Fourth

---

[4] *Gates* was decided before the amendment to the Magistrate Judge's Act in 1991. Prior to that time, magistrate judges were referred to as "magistrates." That term is no longer used.

Amendment requires no more." *Id.* (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)).

Upon examining the Declaration of Brian Marschman filed in support of the warrants,[5] which was sworn before Magistrate Judge Mikel Williams, the Court is satisfied probable cause supported the issuance of the warrants. At the time the warrants were issued, APHIS had, and still has, reason to believe the twelve fields may have come into contact with PCN contaminated soil. The Farmers argue that cannot be true, because the fields are only "associated" with fields that tested positive for PCN within the last ten years. The Farmers argue that such an attenuated relationship is insufficient to establish probable cause.

An "associated" field is a field found to be "at risk for infestation with pale cyst nematode in accordance with § 301.86-3(c)(2)." 7 C.F.R. § 301.86-1. Section 301.86-3(c)(2) provides that the Administrator will designate a field as associated when:

> [P]ale cyst nematode host crops, as listed in § 301.86–2(b), have been grown in the field in the last 10 years and
> (i) The field shares a border with an infested field;
> **or**
> (ii) The field came into contact with a regulated article listed in § 301.86–2 from an infested field within the last 10 years;
> **or**
> (iii) **Within the last 10 years, the field shared** ownership, tenancy, seed, drainage or runoff, **farm machinery**, **or other elements of shared cultural practices with an infested field** that could allow spread of the pale cyst nematode, as determined by the Administrator.

---

[5] APHIS submitted the Declaration of Brian Marschman with exhibits specific to each of the twelve fields as the basis for probable cause in support of the twelve warrants.

**MEMORANDUM DECISION AND ORDER/REPORT AND RECOMMENDATION - 9**

7 C.F.R. 301.86-3(c)(2) (emphasis added).

According to Marschman's declaration, since 2006, 2,897 acres in Idaho have been designated as infested with PCN, meaning PCN was found. 55,000 acres have been designated as associated. Associated fields are eligible for deregulation following a sequence of soil surveys with no PCN detections. Potatoes grown on associated fields are allowed to move under permit subject to specified handling and containment procedures, such as steam treating farm equipment before leaving the field. Soil surveys are required to determine risk and develop the appropriate level of regulatory control.

PCN can lay dormant in the soil for a long time, lying in wait for a host crop, which it will then destroy. Thus, although potatoes may be grown on associated fields, potatoes may not be grown on infested fields. In addition to pressure washing farm equipment that contacts soil from associated or infested fields, equipment that contacts soil from infested fields must additionally be steam treated under a tarp to kill any PCN not removed by pressure washing. Marschman indicated the owners of the twelve associated fields and their operators complied with minimum soil sanitation requirements, but if PCN is present in or on the twelve fields, those minimum standards will not provide adequate protection against PCN. If the associated field is infested, full sanitation requirements, including steam treatments, will be necessary to kill the PCN, and potatoes cannot be planted.

Marschman established the connection between the twelve associated fields and Field 1 was more than just common ownership. In 2014 and 2015, APHIS surveyed Field 1, and found 149 cysts. Pursuant to APHIS's investigation, it was determined the same

**MEMORANDUM DECISION AND ORDER/REPORT AND RECOMMENDATION - 10**

tenant was farming Field 1 and the other twelve fields. In addition, the farm machinery used in Field 1 was not washed after it was used in Field 1 and before it entered the twelve associated fields. All twelve fields grew PCN host crops. APHIS therefore has reason to believe PCN infested soil attached to farm equipment used in Field 1, and the farm equipment then traveled to the twelve fields at issue here.

Based upon Marschman's declaration, and under the totality of the circumstances, the warrants appear to be supported by competent and sufficient evidence, and properly granted by Magistrate Judge Williams.[6] The declaration establishes probable cause to believe that the twelve fields may contain PCN. The fields were farmed with the same equipment used on an infested field; the equipment was not subject to the more stringent sanitation requirements or not washed at all; and these practices allowed soil from the infested field to come into contact with the twelve fields, thereby allowing PCN to spread.[7]

---

[6] The record contains numerous affidavits submitted by the Farmers in support of their motion. While the information is tangentially relevant here for providing background and ensuring the warrants are carried out so as to limit damage to the fields, as discussed in section E, the information was not before Judge Williams at the time he issued the warrants.

[7] The Farmers argued the Court should have examined all of the underlying documents supporting Marschman's assertions. However, "'the quanta ... of proof' appropriate in ordinary judicial proceedings are inapplicable to the decision to issue a warrant. Finely-tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the magistrate's decision." *Gates*, 462 U.S. at 235. The Court was not required to examine the documents the agent possessed, and was allowed to rely upon the statements in the declaration if the Court found Marschman credible.

**D.**     *Suppression*

The Farmers seek to suppress (or preclude) the testing of the soil samples collected on November 9, 2016, because the soil samples were collected under invalid warrants. Alternatively, the Farmers argue the soil samples collected to date should not be subject to testing until the Court has an opportunity to consider and evaluate the sampling protocols challenged in *Mickelsen*.

In a case involving the collection of air emission studies, the Court of Appeals for the Ninth Circuit concluded the district court appropriately denied the plaintiff's motion to suppress because the administrative process was not yet complete. *Koppers Industries, Inc. v. US EPA*, 902 F.2d 756, 759 (9th Cir. 1990). The court concluded it would be premature for the court to suppress the use of air emissions data at a time when the administrative process was not yet complete and its effects had not been felt by the plaintiff in a concrete way. *Id. See also In re Establishment Inspection of Hern Iron Works, Inc.*, 881 F.2d 722, 729 (9th Cir. 1989) ("As a general rule, the exclusionary rule does not attach to civil or administrative proceedings.").[8]

The Court should decline to apply what amounts to the exclusionary rule here. There is no evidence to suppress because the soil sample results have not been used to initiate administrative action which impacts the Farmers in any appreciable way.

---

[8] There is authority suggesting that the District Court does not have jurisdiction to entertain motions to quash administrative warrants. *See In re Worksite Inspection of Quality Products, Inc.,* 592 F.2d 611, 617 (1st Cir. 1979) (instructing the district court to dismiss proceedings in which the court denied a motion to quash an administrative warrant, holding the proper forum to pursue the matter was in the OSHA enforcement proceeding).

Moreover, the Farmers have cited no authority which would allow the Court to prevent APHIS from testing the soil samples. Further delay in testing the soil samples would jeopardize APHIS's obligation to protect agriculture, the environment, and the economy. And last, the Court was asked to review whether there was probable cause to "enter the property, and collect and seize soil samples from soils located on or within the subject property"; what APHIS does with the soil samples is not before this Court.[9]

### E.   *Protective Order*

Alternatively, the Farmers seek a protective order prohibiting the collection of soil samples with tractors and four wheelers, because of the potential damage to the soil and the existing winter wheat crop planted between September 28 and October 5, 2016. Apparently, APHIS utilizes three methods of soil sample collection: manual crews (teams of 8 – 20 people walking the field and collecting soil by hand); ATV-mounted mechanical samplers that drive through the field and collect samples; or tractor mounted mechanical samplers. Surveying involves collecting soil at a rate of 20 pounds per acre, with soil collected at regular intervals in a grid pattern. Field conditions must be relatively dry to moist for successful surveying.

APHIS responded to the Farmers' arguments with the supplemental declaration of Mr. Marschman. On November 9 and 10, 2016, APHIS sampled three fields (S-11, S-3, and S-4/5/6). These fields had a winter wheat crop 3-5 inches tall. S-11 field was sampled

---

[9] If this were a criminal matter, the proper procedure would be a motion pursuant to Fed. R. Crim. P. 41(e), which allows a person aggrieved by an unlawful search and seizure to bring a pre-indictment motion for the return of property in the district in which the property was seized. The Farmers' motion does not request return of the soil samples collected.

using a manual crew. S-3 field was partially sampled using a mechanical (ATV) crew, and sampling was completed with a manual crew. S-4/5/6 field was partially sampled using a mechanical (tractor) crew, resumed using a manual crew, and stopped upon receiving notification of the Court's order. Only 64% of the S-4/5/6 field's acreage was sampled.

In an effort to minimize conflict, APHIS decided to forego the use of mechanical sampling on any of the fields affected by the warrants, and notified Mr. Hawker, APHIS's point of contact when the sampling began on November 9, 2016. With the change to manual sampling, APHIS estimates it will take between 2 and 3 weeks to complete the remaining surveys, if they operate Monday through Saturday, barring any snowfall or freezing temperatures. Any delay would effectively prevent sampling until next Spring, and testing would not be complete until after the potato crop had been planted.

APHIS argues the hand sampling satisfies the Farmers' concerns, and would agree to the limitation of hand sampling, provided ATV's may be used to gather the soil samples once collected. At the hearing, the Farmers indicated that hand sampling of the remaining fields would be tolerated if execution of the warrants proceeds. The Court recommends that the warrants be limited to require hand sampling.

F.   APHIS's Motion for Reconsideration

In light of the Court's report and recommendation, the Court concludes it should vacate its order staying further soil sampling as authorized by the warrants. The Court intended only to preserve the status quo, as it understood matters, until the parties'

**MEMORANDUM DECISION AND ORDER/REPORT AND RECOMMENDATION - 14**

motions could be heard, and stated as much in the Order. The Court will recommend that the Farmers' motion to quash be denied, and the parties will have an opportunity to object to the Court's recommendation in short order. Accordingly, vacation of the Court's order staying further sampling and testing of the collected soil samples is justified.

The duration of the warrants' authorization was thirty days from November 8, 2016, unless the warrants are renewed or extended. Because of the Court's order staying proceedings from November 10, 2016, until today, the warrants are authorized for an additional eight days from November 8, 2016.

## CONCLUSION

Based upon the above, the Court recommends that the district judge deny the Farmers' motion to quash, but grant their request for alternative relief and limit the soil sampling protocol to require hand sampling. The Court will vacate its prior order.

Because of the nature of the request, the Court finds good cause exists to shorten the period of time within which objections to the Court's recommendation may be made. Dist. Idaho L. Rule 6.1 (allowing a period to be shortened for cause shown).

## **ORDER**

**NOW THEREFORE IT IS HEREBY ORDERED:**

1) APHIS's Emergency Motion for Reconsideration and/or to Vacate Stay Order (Dkt. 17) is **GRANTED**.

2) The Court's Order (Dkt. 16) is **VACATED**, and the stay is lifted.

3) The Clerk is directed to serve a copy of this Order and Report and Recommendation electronically upon Counsel for CVRH Farm, LLC, Mickelsen Farms, LLC, Steven Oleson, Josh Morris, Paul Reid, Casey Reid, and Ford Call at the following email addresses:

wmyers@hollandhart.com
adbennett@hollandhart.com
kjhouston@hollandhart.com

DATED: November 18, 2016

_____
Honorable Candy W. Dale
United States Magistrate Judge

## RECOMMENDATION

**NOW THEREFORE IT IS HEREBY RECOMMENDED:**

1) Emergency Motion to Quash or Alternatively to Stay Execution of Warrants, to Issue Protective Order, and to Suppress Evidence Collected (Dkt. 14) be **DENIED IN PART AND GRANTED IN PART**, consistent with the Report.

Written objections to this Report and Recommendation must be filed by **November 28, 2016, and responses must be filed by December 2, 2016**. 28 U.S.C. § 636(b)(1); Dist. Idaho L. Rule 72.1(b); Dist. Idaho L. Rule 6.1. If a party fails to object, that party may waive the right to raise factual and/or legal objections to the United States Court of Appeals for the Ninth Circuit.

DATED: November 18, 2016

_____
Honorable Candy W. Dale
United States Magistrate Judge